268 N.J. Super. 469 (1993)
633 A.2d 1050
IN THE MATTER OF THE PETITION OF CASINO LICENSEES FOR APPROVAL OF A NEW GAME, RULEMAKING AND AUTHORIZATION OF A TEST.
Superior Court of New Jersey, Appellate Division.
Argued December 3, 1993.
Decided December 9, 1993.
Before Judges KING, HAVEY and ARNOLD M. STEIN.
*470 Joel H. Sterns, argued the cause for appellant (Hannoch Weisman, P.C., attorneys; Mr. Sterns, of counsel; Mark D. Schorr and Joseph A. Fusco, of counsel and on the brief; Karen A. Confoy on the brief; Mr. Sterns and Mr. Fusco on the supplemental letter brief).
John R. Zimmerman, General Counsel, argued the cause for respondent New Jersey Casino Control Commission (Mr. Zimmerman on the brief).
Peter N. Perretti, Jr., argued the cause for the intervenors (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; John P. Sheridan, Jr., on the letter brief; Mr. Perretti on the reply letter brief).
The opinion of the Court was delivered by ARNOLD M. STEIN, J.A.D.
We accelerated this appeal, filed on November 18, 1993, permitted the professional major leagues to intervene and promptly heard oral argument.
We affirm the determination of the New Jersey Casino Control Commission that it has no constitutional or statutory authority to authorize sports betting in New Jersey's gambling casinos.
Appellants are the operators of all twelve licensed gambling casinos in Atlantic City. Intervenors are the leagues conducting major league professional sports in this country: the National Football League, the National Basketball Association, the National Hockey League and the Commissioner of Baseball. Earlier this year, the Legislature chose not to vote on a joint resolution to place a referendum on the ballot permitting a proposed constitutional amendment authorizing casino betting on sports events. The Leagues were among those who vigorously opposed submission of this proposed constitutional amendment to the voters.
Thereafter, on November 15, 1993, the Casinos filed a petition with the Commission seeking a determination that the 1976 state *471 constitutional provision authorizing casino gambling and the regulatory legislation enacted pursuant to it authorized sports betting operated by casinos as a "gambling game" permissibly conducted in those establishments. N.J. Const. art. IV, § 7, ¶ 2D. Attached to this petition was a comprehensive set of proposed regulations, modeled after those adopted in the state of Nevada where sports betting is legal. Sports betting, called "sports wagering" in the proposed regulations, is permitted on all sports events, professional and amateur, with the exception of sports contests in which there is participation by an educational institutional or non-professional organization principally located in New Jersey; high school sports events; the outcome of a public election held inside or outside of New Jersey; and any horse race not governed by the Simulcasting Racing Act, N.J.S.A. 5:5-110 to -126.
The Casinos required a speedy decision by the Commission. Under the Professional and Amateur Sports Protection Act, 28 U.S.C.A. § 3701 to 3704, governmentally-authorized betting on athletic events generally expired on January 1, 1993. However, the effective date of the prohibition is extended for New Jersey casinos to one year after the effective date of the Act, or January 1, 1994. 28 U.S.C.A. § 3704(a)(3)(A).
The Commission rejected the interpretation advanced by petitioners. So do we.
The constitutional amendment authorizing casino gambling provides:
It shall be lawful for the Legislature to authorize by law the establishment and operation, under regulation and control by the State, of gambling houses or casinos within the boundaries, as heretofore established, of the city of Atlantic City, county of Atlantic, and to license and tax such operations and equipment used in connection therewith.... The type and number of such casinos or gambling houses and of the gambling games which may be conducted in such establishment shall be determined by or pursuant to the terms of the law authorizing the establishment and operation thereof.
[N.J. Const. art. IV, § 7, ¶ 2D (emphasis added).]
The expression of legislative intent surrounding adoption of this constitutional amendment is so strong that we would be remiss if we were to decide that this constitutional amendment authorizes *472 not only traditional in-house gambling games inside casinos but also permits sports betting therein. State v. Churchdale Leasing, Inc., 115 N.J. 83, 101, 557 A.2d 277 (1989) (examination of legislative history is relevant to determine legislative intent).
Gambling has been legalized in New Jersey very cautiously, one step at a time. The constitution of 1844 originally provided "no lottery shall be authorized by this state; and no ticket in any lottery not authorized by a law of this state shall be bought or sold within the state." N.J. Const. of 1844 art. IV, § 7, ¶ 2. That paragraph was amended on September 28, 1897, to a more restrictive provision, specifically prohibiting lotteries and all other forms of gambling:
No lottery shall be authorized by the legislature or otherwise in this state, and no ticket in any lottery shall be bought or sold within this state, nor shall pool-selling, book-making or gambling of any kind be authorized or allowed within this state, nor shall any gambling device, practice or game of chance now prohibited by law be legalized, or the remedy, penalty or punishment now provided therefor be in any way diminished.
[Id., as amended, September 28, 1897, proclamation October 26, 1897.]
No form of legalized betting was permitted in New Jersey until 1939, when the constitution was amended to permit pari-mutuel betting on horse races, but only at horse tracks:
It shall be lawful to hold, carry on, and operate in this State race meetings whereat the trotting, running or steeplechase racing of horses only may be conducted between the hours of sunrise and sunset on week days only and in duly legalized race tracks, at which the pari-mutuel system of betting shall be permitted.
[N.J. Const. of 1844 art. IV, § 7, ¶ 2, as amended June 20, 1939, proclamation July 11, 1939.]
The prohibition against any kind of gambling not specifically permitted by the constitution was carried over into our 1947 constitution:
No gambling of any kind shall be authorized by the Legislature unless the specific kind, restrictions and control thereof have been heretofore submitted to, and authorized by a majority of the votes cast by, the people at a special election or shall hereafter be submitted to, and authorized by a majority of the votes cast thereon by, the legally qualified voters of the State voting at a general election....

[N.J. Const. art. IV, § 7, ¶ 2.]
*473 The constitutional prohibition contained certain exceptions permitting the conduct of bingo and the selling of raffles by charitable, religious and other non-profit organizations. Id., art. IV, § 7, ¶ 2A and B.
The constitution was again amended in 1969 to specifically authorize the conduct of the state lotteries. Id., art. IV, § 7, ¶ 2C, amended general election November 4, 1969.
Following a rejection in 1974 by the voters of a proposed referendum authorizing state-wide casino gambling, the constitution was amended in 1976 to add the previously-cited provision authorizing in-house gambling in casinos located in Atlantic City. Id., art. IV, § 7, ¶ 2D.
When hearings on the proposed amendment were conducted before the Assembly State Government and Federal and Interstate Relations Committee, Steven P. Perskie, the Assembly sponsor of the proposed amendment, specifically stated that the amendment "would not authorize sports betting of any kind." Perskie is now chairman of the New Jersey Casino Control Commission. Its Senate sponsor, Joseph McGahn, stated:
Gentlemen, I agree with you as far as all sports betting is concerned.... There is nothing in this bill which would permit casinos ... to have all sports betting....
When the Committee reported favorably on the proposed joint legislative resolution authorizing submission of Atlantic City casino gambling to the voters of this state, it issued the following statement:
The committee is reporting this bill favorably with the expressed understanding that it is not the intention of the sponsors, the committee, or the Legislature that this constitutional amendment would authorize gambling legislation that would permit any form of gambling or betting on the outcome of any sports events or other activities that take place beyond the confines of the casino itself.

[Senate Statement to Assembly Concurrent Resolution No. 126, May 19, 1976 (emphasis added).]
The New Jersey Supreme Court has recognized this state's step-at-a-time approach to the introduction of legalized gambling within our borders. In Atlantic City Racing Ass'n v. Attorney *474 General, 98 N.J. 535, 489 A.2d 165 (1985), the Court held that a specific constitutional amendment was required to authorize inter-track pari-mutuel betting on simulcast horse racing. Id. at 551-52, 489 A.2d 165. Its unanimous opinion authored by Judge Matthews, temporarily assigned, noted that:
The evolution of legalized gambling in New Jersey has been grudging. Because of widespread abuses in various gambling activities and the attendant social and economic ills engendered, gambling has historically been viewed as an undesirable activity.
[Id. at 539-40, 489 A.2d 165.]
New Jersey's comprehensive policy against all forms of gambling (except where specifically authorized by the people) has been clear and long-standing.... This principle remains inviolate to this day.

[Id. at 546, 489 A.2d 165.]
Elsewhere the Court noted:
By adopting the Constitution of 1947, which contains Art. IV, § 7, par. 2, the people reaffirmed the sentiments implicitly expressed by the comprehensiveness of the 1939 amendment that any decisions as to the expansion of gambling in New Jersey were to be considered and resolved by its citizens at the polls and not by the Legislature. The adoption of the 1939 amendment in this historical context, following a forty-two year ban on all public gambling, suggests a cautious and restrictive approval of the circumstances under which the [then] sole authorized activity, pari-mutuel wagering on horse races, would be allowed.

[Id. at 544, 489 A.2d 165.]
The gambling provisions of the state constitution were later amended in 1990 by a provision authorizing the Legislature to permit casinos to accept bets on results of simulcast horse races conducted at tracks within or outside New Jersey:
It shall be lawful for the Legislature to authorize, by law, (1) the simultaneous transmission by picture of running and harness horse races conducted at race-tracks located within or outside of this State, or both, to gambling houses or casinos in the city of Atlantic City and (2) wagering at those gambling establishments on the results of those races.
[N.J. Const. art. IV, § 7, ¶ 2E, amended November 6, 1990.]
The constitutional permission to authorize simulcast horse betting did not expand the definition of "gambling games" in subparagraph *475 D. Instead, a specific provision was added, subparagraph E. Ibid.
The introduction of various forms of legalized gambling into this state has always been by specific constitutional amendment. Sports betting is not a constitutionally-authorized form of legalized gambling.
Moreover, the Commission lacks legislative as well as constitutional authority to authorize casino-operated sports betting. The Casino Control Act, N.J.S.A. 5:12-1 to -210, defines "game" or "gambling game" as
[a]ny banking or percentage game located within the casino or simulcasting facility played with cards, dice, tiles, dominos, or any electronic, electrical, or mechanical device or machine for money, property, or any representative of value.
[N.J.S.A. 5:12-21, as amended, L. 1991, c. 182, § 9, eff. June 29, 1991; L. 1992, c. 19, § 26, eff. June 12, 1992.]
Originally, the Legislature authorized only specified games as suitable for casino gambling, a list which was later expanded by statutory amendment so that it included roulette, baccarat, blackjack, craps, big six wheel, slot machines, minibaccarat, red dog, pai gow, and sic bo, and any variations or composites of those games found suitable by the Casino Control Commission for use after an appropriate test or experimental period. N.J.S.A. 5:12-5. Later, the statute was amended to permit any other game which is "determined by the commission to be compatible with the public interest and to be suitable for casino use after such appropriate test or experimental period as the commission may deem appropriate." L. 1992, c. 9, § 1, eff. May 19, 1992.
Before this last amendment was adopted, its sponsors, Senator William L. Gormley and Assemblyman John F. Gaffney, sent a joint letter to the chairman of the Assembly Financial Institutions Committee:
The question has been raised whether A-1233 and S-652 are intended to grant the Casino Control Commission power to authorize casinos to conduct wagering on sports events. As sponsors of these companion bills, we advise you that the bills have no such intent. The bills, even if so intended would not have that effect because a constitutional amendment approved by the voters is a prerequisite to the commencement of sports wagering in any form in New Jersey.
[Letter from Gormley and Gaffney to Penn of May 4, 1992.]
*476 The Committee then released the bill with the following statement:
The committee releases this bill after being informed by the sponsors, and with the understanding, that this bill is not intended to and does not grant the Casino Control Commission power to authorize casinos to conduct wagering of any kind on sports events. The committee, by the release of this bill, take no position with respect to sports wagering. The committee agrees with the sponsors that sports wagering can only be authorized by adoption of a constitutional amendment approved by the voters at a general election and by enactment of enabling legislation thereafter.
[Assembly Financial Institutions Committee Statement to Assembly, No. 1233, May 4, 1992.]
Additionally, N.J.S.A. 5:12-194(e) provides that sports betting and casino simulcasting shall be conducted in the same area, and in accordance with regulations of the Casino Control Commission only "if wagering at casinos on sports events is authorized by the voters of this State and by enabling legislation enacted by the Legislature." Ibid.
The Commission's conclusion that sports betting is not a permitted form of gambling in Atlantic City's casinos is consistent with the constitutional and statutory scheme which, with one exception, permits only those games which take place completely within the confines of a casino. The conduct of in-house casino games is subject to the strict regulation of the Casino Control Commission, lessening the opportunity of a gambler, casino or third person to fix such games. Pari-mutuel horse betting is specifically permitted by our constitution, as is simulcast betting on horse races, whether the race is conducted inside or outside of this state. Horse racing is also a highly regulated activity stringently supervised by the New Jersey Racing Commission pursuant to N.J.S.A. 5:5-22 to -99. Betting on simulcast horse races is also controlled by the Simulcasting Racing Act, N.J.S.A. 5:5-110 to -126. Regulatory controls exist in every state where pari-mutuel betting is conducted.
Except for constitutionally-authorized simulcast horse race betting, gambling casinos may operate only those games conducted *477 solely in-house. They may not offer betting on events which take place or where the result is determined at a location outside a casino's four walls.
Affirmed.